[No. H000278. Sixth Dist. Nov. 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ESQUIEL ZEKE SANCHEZ, JR., Defendant and Appellant.

**COUNSEL**

Albie B. Jackimowicz and Christenson, Garvey, Lord & Jackimowicz for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**PANELLI, P. J.**—On January 3, 1983, appellant Esquiel Zeke Sanchez, Jr., was charged in an information with one count of possession of Lysergic Acid Diethylamide (LSD) (Health & Saf. Code, § 11377, subd. (a)) and one count of public intoxication (Pen. Code, § 647, subd. (f)).[1] On January

---

[1]All further statutory references are to the Penal Code.

24, 1983, appellant pled guilty to the public intoxication charge and was referred to a drug diversion program on the possession charge. Appellant later violated conditions of the diversion order and his case was returned to the criminal calendar for normal prosecution. Following the denial of his motion to suppress the evidence (§ 1538.5), appellant pled guilty to the possession charge. This plea was entered on condition that he would not be sentenced to state prison and that he would be given $5,000 bail on appeal.

Appellant was sentenced to one year in the county jail and bail on appeal was set at $5,000. He appeals from the judgment of conviction. We find his appeal to be without merit and affirm.

*Facts*

On April 6, 1982, at approximately 4 a.m. San Jose Police Officer Nestor Torres responded to a call regarding a disturbance on the corner of Bermuda and La Porte streets in San Jose. When the officer arrived at the scene, he observed five or six young men standing on the corner drinking beer. He noticed they were "staggering around, laughing, [and] screaming." The officer then asked the individuals to disperse. When they refused to leave, he told the group he was leaving and when he returned, he did not want to see the men still in the area.

When Officer Torres returned to the scene approximately 15 minutes later, he found the same individuals standing on the corner "drinking beer and laughing." He then told the men to "drop their beers and go home." While the others walked away, appellant remained on the corner and "began to laugh." At that point the officer called to him and asked him to step toward his vehicle. Appellant stumbled forward and put his hand on the hood of the police car. At that point the officer detected the odor of alcoholic beverage on his breath and also emanating from his clothing. The officer noticed appellant's eyes were bloodshot, his balance was unstable, and his speech was slurred. The officer was concerned about appellant's safety and "felt due to [appellant's] present condition . . . he wouldn't be able to get home on his own." Officer Torres then arrested appellant for being drunk in public (§ 647, subd. (f)).[2]

After placing appellant under arrest, Officer Torres conducted a pat down search for weapons and handcuffed appellant. The officer then reached into appellant's rear right pocket and pulled out a brown leather wallet, looking

---

[2]The officer testified that at that point he fully intended to transport appellant to the police station. He further testified there was "no chance" for defendant to be released before being booked or jailed.

for identification. A plastic baggie fell out of the wallet and onto the ground. The baggie contained pieces of paper the officer believed to contain LSD. The substance inside the baggie was later identified to be LSD.

At the preliminary hearing, defense counsel objected to the introduction of evidence derived from appellant's arrest and subsequent search. The court overruled this objection. In superior court appellant again moved pursuant to section 1538.5 to suppress the evidence and testimony derived from the search. The trial court denied the motion. This appeal followed.

*Discussion*

■ Claiming the trial court erred in denying his section 1538.5 motion, appellant contends the warrantless search of his person exceeded the permitted scope of a search incident to a lawful arrest. We disagree.

For support of his contention, appellant relies upon *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]. In *Longwill* the defendant was arrested for public intoxication. Incident to that arrest, the officer conducted a full body search of defendant and seized a marijuana cigarette found in his shirt pocket. The California Supreme Court held the marijuana cigarette was inadmissible as the product of an unlawful search. In reaching its conclusion, the majority in *Longwill* acknowledged that "[t]he only possible rationale which could be advanced to justify the instant search is the [federal] *Robinson-Gustafson* rule. [Citations.]" (*Id.*, at p. 951.) The court, however, declined to adopt this federal rule and instead relied upon article I of the California Constitution to hold that at the time of arrest a full body search of an individual arrested for public intoxication was unlawful.[3] Justice Clark, in a dissent, disagreed and would have upheld the search on the basis of the *Robinson-Gustafson* rule. (*Id.*, at p. 952.)

The case at bench is factually analogous to *People* v. *Longwill, supra,* 14 Cal.3d 943, since the arresting officer conducted a custodial search of appellant at the time of his arrest for public intoxication. Nonetheless, we conclude that we are no longer bound by the holding of *Longwill.* In our view, the federal *Robinson-Gustafson* rule urged in Justice Clark's dissent in *Longwill* is now the law in California. The offense and arrest in this case took place on August 6, 1982, which was *after* the California electorate approved what is popularly known as Proposition 8. Accordingly the pro-

---

[3]The Supreme Court in *Longwill* explained that under California law the officer must wait to conduct the search "until such time as [the arrestee is] actually to be incarcerated." (*Id.*, at p. 952.) However, this dictum was later disapproved in *People* v. *Laiwa* (1983) 34 Cal.3d 711, 728 [195 Cal.Rptr. 503, 669 P.2d 1278].)

visions of Proposition 8 are applicable to our analysis of this case. (See *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].)

■ "Proposition 8 . . . eliminate[s] a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744], as modified (1985) 38 Cal.3d 412a, italics in original.) ■ Accordingly, in accordance with the dictates of *In re Lance W.*, we look to federal authorities to determine the validity of the search under review in this case. It is our opinion that the rules set forth in *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467] and *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488], both decided on the same day, are the controlling principles applicable to the facts before us.

In *United States* v. *Robinson, supra,* 414 U.S. 218 the United States Supreme Court held a police officer has the unqualified authority to conduct a full body search incident to a lawful arrest. The *Robinson* court rejected the notion that searches incident to a lawful arrest were controlled by the standards laid down in *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. (*Id.,* at pp. 234-235 [38 L.Ed.2d at pp. 439-440].) Justice Rehnquist, speaking for the majority, clearly stated: "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm or to discover evidence, *does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.* A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest *requires no additional justification.* It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that Amendment." (*Id.,* at p. 235 [38 L.Ed.2d at pp. 440-441], italics added.)

We also find further support in *People* v. *Gutierrez* (1984) 163 Cal.App.3d 332 [209 Cal.Rptr. 376], which arose after the enactment of Proposition 8. In *Gutierrez* the court relied upon *United States* v. *Robinson, supra,* 414 U.S. 218 to uphold the validity of a full search incident to a custodial arrest. In that case, the defendant was arrested for driving under the influence of a drug or an alcoholic beverage. Upon the arrest, the officer conducted a full custodial search of defendant. During the search, the officer found a plastic baggie of marijuana and a pill box. The officer then opened

the pill box and discovered jewelry which was later determined to have been stolen. Citing *United States* v. *Robinson, supra,* the court held the police officer was justified in conducting a full search of defendant's person at the time of the arrest.[4]

In the instant case, defendant was lawfully arrested for being drunk in public. (Pen. Code, § 647, subd. (f).) The officer then searched defendant, admittedly looking for weapons and identification. Upon discovery of appellant's wallet, the officer opened it and a plastic baggie containing LSD dropped to the ground. In light of the "unqualified authority of the arresting officer to search the arrestee's person" (*United States* v. *Robinson, supra,* at p. 229 [38 L.Ed.2d at p. 437]), we determine the officer's action was lawful.

■ ■■■ Nonetheless, appellant contends that *Robinson* is inapplicable here since in the instant case the arresting officer had the discretion to release appellant prior to incarceration. (See § 849, subd. (b)(2), § 853.6, subd. (a).)[5] ■ However, this contention brings us to the *Gustafson* part of the *Robinson-Gustafson* rule.

In *Gustafson* v. *Florida, supra,* 414 U.S. at p. 265 [38 L.Ed.2d at p. 461], the defendant was arrested for a minor traffic violation. Incident to that arrest, the officer searched him and found a packet containing marijuana. Claiming the search was unlawful, the petitioner contended that *Robinson* was distinguishable because, unlike *Robinson,* there were no police regulations which required the officer to take petitioner into custody, nor were there police department policies requiring full scale body searches upon arrest in the field. Rejecting petitioner's contention, the court stated "[t]hough the officer here was not required to take the petitioner into custody by police regulations as he was in *Robinson,* and there did not exist a departmental policy establishing the conditions under which a full-scale body search should be conducted, we do not find these differences determinative of the constitutional issue. [Citation.] It is sufficient that the officer had probable cause to arrest the petitioner and that he lawfully effectuated

---

[4]The court also found this warrant exception permitted the officer to search any closed containers found on the person arrested. (See, *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].)

[5]Section 849, subdivision (b)(2) provides: "(b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever: . . . [¶] (2) The person arrested was arrested for intoxication only, and no further proceedings are desirable." However, "[t]here is no requirement that a person arrested for a . . . misdemeanor violation must be released without bail nor without booking. It is a matter within the discretion of the arresting officer or the booking officer." (*People* v. *Superior Court* (1973) 30 Cal.App.3d 257, 264 [106 Cal.Rptr. 211].)

the arrest and placed the petitioner in custody." (*Gustafson* v. *Florida, supra,* at p. 265 [38 L.Ed.2d at p. 461], fn. omitted.)

Here, the officer with probable cause to arrest appellant for a violation of section 647, subdivision (b), did in fact *arrest* appellant. The arrest was lawful. Therefore, we believe the mere fact that Officer Torres may have had the option, if he chose, without arrest, to release appellant is wholly irrelevant in the instant factual setting. The simple answer is that the officer testified he fully intended to book appellant into jail; he did not plan to release appellant. Under these circumstances there was no chance appellant would be released before being incarcerated. We therefore find appellant's attempt to distinguish the instant case from *Robinson* to be wholly without merit.

Judgment is affirmed.

Agliano, J., and Leach, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.